WILFRED BOYER *vs.* NEW ENGLAND CITRUS BOWL, INC.

Worcester.   February 3, 1964. — February 28, 1964.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Negligence,* Conveyor, Contributory.

Evidence in an action of the circumstances in which, while employees of the defendant stationed at the upper end of an inclined conveyor were moving cartons of canned goods down it to the plaintiff stationed at its lower end in plain view of the employees to take the cartons off it and place them on an elevator behind him, and at a time when the plaintiff's back was turned to the conveyor, as the employees saw, one of the employees sent down a carton which went off the lower end of the conveyor and struck and knocked over the plaintiff warranted a finding of negligence of the employees toward him and did not require a ruling that as matter of law he was guilty of contributory negligence.

TORT.   Writ in the Superior Court dated August 16, 1961.

At the trial before *Ford,* J., a motion by the defendant for a directed verdict was denied, and there was a verdict for the plaintiff.   The defendant alleged an exception.

*Joseph F. Sawyer, Jr.,* for the defendant.

*Stanley B. Milton* for the plaintiff.

KIRK, J.   In this action of tort for negligence the sole question is whether the defendant was entitled to a directed verdict.

It is not disputed that on January 6, 1961, the plaintiff, while standing at the foot of a conveyor or slide, was struck and injured by a carton of canned goods placed on the conveyor by an employee of the defendant.   The circumstances preceding and attending the injury, as gathered from the agreed bill of exceptions, must be stated in detail for a proper presentation of the issue.   We state them in the light most favorable to the plaintiff. *Howes* v. *Kelman,* 326 Mass. 696, 696–697.   On the day of the injury, the forty-nine year old plaintiff had been employed for ten months by Clark University, at Worcester, as a maintenance man.   In addition to cleaning and painting he assisted in the unload-

ing of trucks. On January 6, 1961, he was instructed to assist in the unloading of a two and one-half ton van truck in which the defendant was making delivery of canned goods and groceries to the cafeteria of the university. The truck had been backed up to the loading platform of the cafeteria by an employee of the defendant. The platform was four feet above the ground, six feet wide and fifteen feet long. One of the two doors on the platform opened into the elevator shaft in the building. The defendant's two truck employees set up a conveyor, fifteen feet long, with rollers (like the wheels of roller skates) on axles connecting the metal sides, in the following manner: one end rested upon cases inside the truck; the other rested upon one or two cases on the platform at the door to the elevator shaft. An angle of thirty to forty-five degrees was formed by the planes of the conveyor and the platform.

The plaintiff took his position on the platform at the lower end of the conveyor which was approximately at knee level. He had never unloaded from a conveyor before. There was no conversation with the defendant's employees before the unloading began. Alternately the two employees of the defendant, from positions inside the truck, placed cartons of canned goods on the conveyor. The cartons weighed approximately forty-five pounds, and were twenty-four inches long, eighteen inches wide and nine inches high. The plaintiff faced the truck and as each carton came down the conveyor he caught it from the rollers, lifted it, pivoted to the left on his left foot, and moved his right leg around so that his back was to the truck and he was facing the elevator, in which he placed the carton. He then straightened up and turned to face the truck and to receive the next carton. Eight cartons had thus been received by the plaintiff and each put by him in a different place in the elevator. The interval between putting the cartons on the conveyor was determined by the defendant's employees' observing that the plaintiff was ready to catch the carton when it was put on. The injury to the plaintiff occurred when a fifty pound carton, placed on the conveyor by one of the defendant's employees while the plaintiff's back was turned, as

Boyer v. New England Citrus Bowl, Inc.

described, slid down and off the conveyor and struck the plaintiff on the side of his right knee knocking him over. Both employees of the defendant had an unobstructed view of the plaintiff, and saw that his back was turned when the carton was started on its way down the conveyor.

The evidence presented a question for the jury on the issue of negligence. The case involves the application of the elementary rule whether the employees of the defendant exercised the degree of care which a person of ordinary prudence and caution would have exercised in similar circumstances. The jury could find that they did not. The defendant's employees knew that the plaintiff had to turn his back to them in order to put each carton in place in the elevator, that the time interval would vary, however slightly, with the time required to put each in place, and that a carton sliding down the conveyor, unless stopped, would go off the conveyor at knee level and strike a person standing where they knew the plaintiff was standing. Clearly, the jury could find that the act of starting the carton down the conveyor while the plaintiff's back was turned was a negligent act.

The defendant, relying upon *Sprague* v. *Great Atl. & Pac. Tea Co.* 342 Mass. 711, contends, nevertheless, that it was entitled to a directed verdict. The resemblance between the two cases is superficial. In both cases there was a conveyor, a knowledge by the plaintiff of its purpose, a box propelled along it by an employee of the defendant, and an injury to the plaintiff from contact with the box. There the resemblance ends. In the *Sprague* case, in contrast to the case before us, there was no knowledge on the part of the defendant's employee that the plaintiff, a customer with a physical abnormality, would in any way be endangered by the movement of the box on the conveyor; nor was there any showing ''that the defendant's servant should have anticipated that someone might be standing with his body projecting over the conveyor, or could have, by means of an unobstructed view, looked and seen the plaintiff before pushing the grocery box . . . [nor was it] clear whether the plaintiff was standing with his back protruding over

the conveyor . . . [before the box was pushed] or whether he moved into that position after the grocery box was in motion . . . .''

These differences in the evidence in the two cases, all bearing upon the question of the reasonableness of the conduct of the defendant's employees in the existing circumstances, distinguish the two cases on the issue of negligence.

On the issue of contributory negligence, it is sufficient to say that the defendant had the burden of proving that the plaintiff's reliance upon the expectation that the defendant's employees would not start a box down the conveyor while his back was turned was unreasonable. This issue also was for the jury.

It follows that the denial of the motion for a directed verdict was right, and the order must be

*Exceptions overruled.*