LYLIANE TOUBIANA[1] *vs.* JOHN W. PRIESTLY, JR.[2]

Suffolk.   November 6, 1987. — April 6, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Negligence,* Elevator, One owning or controlling real estate, Standard of care. *Administrative Law,* Regulations.

At the trial of a wrongful death action arising from a fatal head injury suffered by the plaintiff's decedent while transporting lumber in an elevator in the defendant's building, the evidence was insufficient to warrant the jury's finding that, in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident, which occurred when a board held by the decedent and protruding at an angle through a gap in the elevator's grate-type ceiling was struck by the descending counterweight. [88-91]

CIVIL ACTION commenced in the Superior Court Department on September 25, 1981.

The case was tried before *Guy Volterra,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert J. Doyle* for the plaintiff.

*Harvey Weiner (Ripley E. Hastings* with him) for the defendant.

O'CONNOR, J. The plaintiff's deceased, Max Toubiana, died as a result of a head injury he sustained while transporting lumber in a freight elevator in a building owned by a realty trust. The defendant was the sole trustee. In this action for wrongful death, the plaintiff alleges that the death resulted

---

[1] Administratrix of the estate of Max Toubiana.

[2] Trustee of 77 North Washington Realty Trust, doing business as Washington North Realty.

from the defendant's negligent maintenance of the elevator. The case was tried before a jury. The judge denied the defendant's motion for a directed verdict filed at the conclusion of all the evidence. The jury found that the negligence of Toubiana and the negligence of the defendant each contributed fifty per cent to the resulting death, and that the undiscounted damages were $100,000. The defendant then moved for judgment notwithstanding the verdict, and that motion was allowed. The plaintiff appealed, and we allowed the plaintiff's application for direct appellate review. We now affirm the judgment for the defendant.

"The standard to be used on a motion for judgment notwithstanding the verdict is the same as that on a motion for a directed verdict." *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 100 (1987), quoting *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 657 (1978). The test is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). We apply that test to the following evidence, which, although controverted in many material respects, is the evidence most favorable to the plaintiff.

At the time of Toubiana's injury, he and Todd Jesdale, employees of Spring, Inc., were delivering a load of lumber to a ninth-floor tenant at the building owned by the trust. To accomplish this, they used the freight elevator which was substantially covered by a grate-type ceiling consisting of closely spaced, parallel metal bars. There were two sections of the ceiling in which bars had been missing for several months. One of these sections was at the front of the elevator and the other was in the middle. The largest gap, which was in the middle, was a "good foot" wide, and it extended across the elevator. Photographs, including one marked as exhibit 3, showing the elevator ceiling after the incident causing Toubiana's death, were in evidence. Exhibit 3 shows a long board extending through a gap across the middle of the ceiling. The gap, as shown, could be approximately one foot wide, and

several metal bars adjacent to the gap appear to be bent and broken. Others appear to be bent. An employee of the defendant testified that the elevator ceiling as shown in exhibit 3 "looks like" the ceiling before the accident.

The elevator ceiling was ten feet above the floor. Toubiana and Jesdale placed a fourteen to sixteen foot long board in the elevator. They accomplished this by putting the board up through the gap in the middle of the ceiling. They did not push aside any of the metal bars. The board was placed at an angle so that the part that protruded beyond the ceiling was directed toward a wall of the elevator shaft. In order to prevent the upper end of the board from contacting the shaft wall, Toubiana held the board away from the wall. However, as the elevator ascended, the descending elevator counterweight and the board collided. The elevator, which was automatic, was equipped with an emergency stop switch. Jesdale was on the elevator with Toubiana, but he was not stationed at the switch and, in the excitement of the moment, he did not think to employ it. Had he done so immediately when the board and the counter- weight collided, Toubiana would not have been injured. Jesdale and Toubiana, neither of whom was a licensed elevator operator, were the only persons on the elevator. The collision caused the board to bend, and then to break, with the result that Toubiana was killed by a piece of the board or a fractured piece of the elevator apparatus.

The defendant is an architect, and, as such, had some famil- iarity with elevators before Toubiana's accident. The defend- ant's office was in the building where the accident occurred and, several years earlier, the defendant had used the same elevator to move oversized timbers down from upper floors. On that occasion, he opened the elevator ceiling by removing nuts and bolts, and then extended the timbers through the opening. The defendant knew where the counterweights on this elevator were located, and he knew that oversized timbers protruding through the center of the elevator ceiling presented a hazard and had to be carefully positioned straight up and down (at a ninety degree angle to the floor) in order to prevent them from hitting the counterweight. The defendant had used

freight elevators "to take things up through the ceiling" on other jobs, and he had done it carefully because he knew of the hazards.

Herbert Potter and Joseph Morrissey, called by the plaintiff, testified as expert witnesses. Potter testified that a solid elevator ceiling, which the parties stipulated would have been "feasible," is safer than grates, that an open ceiling is unsafe if improperly used, and that, as an elevator inspector, he would not have passed the elevator involved here if its ceiling had been as shown in the postaccident photographic exhibits.[3] Potter also testified that, although not legally required, at the time of the accident a "slack rope device" was available that would have prevented the accident. The elevator was not equipped with such a device.

The other expert witness, Morrissey, testified in substance as follows. Asked whether, "in a freight elevator context," he had an opinion "as to the standard of practice in the industry regarding a requirement for a roof on it," he testified over objection that it was his opinion that there "[s]hould be a solid roof, bar type, as seen in the picture on that type elevator, with an inch and a half gap maximum." Such a roof, he said, would prevent articles from falling into the elevator from above, and would "prevent people from extending articles beyond the perimeter of the elevator cab." Morrissey testified that his opinion was based on "the 524 CMR, the Massachusetts regulations," and that the ceiling as shown in the pictures "did not meet the Mass. Code, the regulations regarding the gaps." Morrissey further opined that it was foreseeable that Toubiana would use the elevator the way he did, that for safe operation, "the roof must be secured," that, in this instance, there should have been a licensed elevator operator, and that, had there

---

[3] Earlier in this opinion, we referred to testimony that the elevator ceiling shown in exhibit 3 "looks like" the ceiling before the accident. Other photographs in evidence show the ceiling in the same condition as shown in exhibit 3. For purposes of this case, we treat the testimony as adequate to have permitted the jury to find that the postaccident photographs in evidence were fair representations of the appearance of the elevator ceiling before the accident.

been a licensed operator, the licensed operator would have hit the emergency stop switch and prevented the accident.

"Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances. It is a want of diligence commensurate with the requirement of the duty at the moment imposed by the law." *Altman* v. *Aronson*, 231 Mass. 588, 591 (1919). Ordinarily, where a duty of care is established by law, the standard by which a party's performance is measured is the conduct expected of an ordinarily prudent person in similar circumstances. The standard is not established by the most prudent person conceivable, nor by the least prudent, but by the person who is thought to be ordinarily prudent. See *Gilhooley* v. *Star Market Co.*, 400 Mass. 205, 207 (1987); *Cimino* v. *Milford Keg. Inc.*, 385 Mass. 323, 330 (1982); *Boyer* v. *New England Citrus Bowl, Inc.*, 347 Mass. 107, 109 (1964). The same standard is frequently expressed in terms of "reasonable care," see, e.g., *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 843 (1987), cert. denied,      U.S.      (1988) (108 S. Ct. 1029 [1988]); *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973); *St. Rock* v. *Gagnon*, 342 Mass. 722, 723 (1961); *Polak* v. *Whitney*, 21 Mass. App. Ct. 349, 351 (1985).

Clearly, the law imposed on this defendant a duty to maintain his property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Mounsey* v. *Ellard, supra*, quoting *Smith* v. *Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 100 (D.C. Cir. 1972), cert. denied, 412 U.S. 939 (1973). However, the defendant was "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." *Gadowski* v. *Union Oil Co.*, 326 F.2d 524, 525 (1st Cir. 1964). The question to be decided, then, is whether the jury reasonably could have concluded that, in view of all the circumstances, an

ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred. We are satisfied that, on the evidence, no such conclusion was warranted.

The plaintiff argues that the jury would have been warranted in finding that an ordinarily prudent person in the circumstances of this case, which include the possession of information that the defendant possessed before this accident, would have provided the elevator with a ceiling through which boards could not be passed without dismantling the ceiling, or would have posted a notice that using the elevator to move materials extending above the ceiling would be dangerous. We do not agree. Ordinarily, a landowner has no duty to protect lawful visitors on his property from risks that would be obvious to persons of average intelligence. See *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 842 (1987); *id.* at 844 (Wilkins, J., concurring); *Clough* v. *New England Tel. & Tel. Co.*, 342 Mass. 31, 36 (1961); *Letiecq* v. *Denholm & McKay Co.*, 328 Mass. 120, 123 (1951); *Polak* v. *Whitney, supra* at 353. The testimony and photographs show that it would have been apparent to persons of ordinary intelligence exercising such minimum care as the circumstances reasonably indicate that the mostly enclosed ten foot high elevator was not designed to transport boards fourteen to sixteen feet long thrust through a hole in the ceiling. The gaps in the ceiling with adjacent bent and broken bars did not suggest otherwise. Persons of ordinary intelligence, although uninformed regarding precisely what machinery and equipment lay beyond the elevator in the shaft, would surely have recognized the reasonable likelihood that a board extended at an angle through the top of a moving elevator would encounter one or more obstacles and, as a result, would be hazardous. Despite the fact that the location and movement of the counterweight was not open to view, the hazardous nature of the decedent's undertaking would have been readily apparent to a reasonably intelligent person exercising a minimum of reasonable care for his own safety.

Furthermore, there was no evidence in this case that, before the accident, anyone had ever operated the elevator upward

with materials extending through the ceiling, nor was there evidence that anyone but the defendant had transported oversize items downward. Also, there was no evidence that similar elevators were customarily used in that fashion or that the defendant had knowledge of similar incidents. Thus, the jury was unwarranted in inferring that an ordinarily prudent person in the relevant circumstances would have provided a solid elevator ceiling or a printed warning concerning the danger of extending materials from the moving elevator into the elevator shaft. It follows that the defendant's failure to adopt either of those measures did not constitute negligence.

No different conclusion is required by the testimony of one of the plaintiff's experts that, on inspection, he would not have passed the elevator in view of its ceiling, that the "standard of practice in the industry" called for an elevator ceiling with bars no more than an inch and one half apart, that the ceiling in question failed to meet Massachusetts regulations, that the decedent's manner of using the elevator was foreseeable, and that, in his opinion, the elevator should have been operated by a licensed operator who would have stopped the elevator in time to have prevented Toubiana's injury. The last mentioned testimony, being speculative, is not helpful. We discuss the other evidence briefly. Because there is no evidence identifying the industry in which the standard practice referred to prevails, it is irrelevant. A standard practice in the elevator manufacturing industry in 1986, for instance, would have no bearing on the care taken by this nonmanufacturer defendant with respect to an elevator manufactured, as the evidence shows this one was, in 1906. Also, the fact that a particular inspector would not have passed this elevator on account of its ceiling does not permit the conclusion, either alone or in combination with the other evidence in the case, that an ordinarily prudent owner of a building possessing the defendant's knowledge would have anticipated the decedent's conduct and guarded against it. Neither is the testimony that the elevator ceiling violated Massachusetts regulations probative. Interpretation of administrative regulations is a matter of law to be decided by the court. *Corsetti* v. *Stone Co.,* 396 Mass. 1, 12 (1985). No relevant

regulation was placed in evidence. Furthermore, the expert witness's testimony that Toubiana's placement of the board through the ceiling gap was "foreseeable" does not strengthen the plaintiff's case. His conclusion in that regard does not appear to have been predicated on any basic facts except those in evidence. We have concluded that those facts do not warrant a finding of the necessary foreseeability. "A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend toward that conclusion any more than toward a contrary one has no evidential value." *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971). Finally, we reject the plaintiff's argument that the testimony that a slack rope device was available and would have prevented the accident warranted the jury's verdict. The fact that it would have been possible to affix such a device to the elevator says nothing about whether an ordinarily prudent building owner with the defendant's background would have been aware of that device and would have affixed it to the elevator.

*Judgment affirmed.*