JOHN J. BARRY vs. BEVERLY ENTERPRISES-MASSACHUSETTS,
INC.[1]

Middlesex. February 7, 1994. - August 12, 1994.

Present: WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Judgment notwithstanding verdict. *Negligence*, One own-
ing or controlling real estate, Snow and ice. *Snow and Ice.*

In a negligence action the defendant landowner's motion for judgment not-
withstanding the verdict should have been allowed where the evidence
was not sufficient to warrant an inference that the defendant knew, or
reasonably should have known, of the icy condition that caused the
plaintiff's fall. [591-592, 592-595]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 3, 1989.

The case was tried before *Margot Botsford*, J., and, after
a motion for a new trial was granted by her and a second
trial before *Peter M. Lauriat*, J., resulted in a mistrial, the
case was tried a third time before *John P. Sullivan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Gerald J. Caruso* (*James E. Fitzgerald* with him) for the
plaintiff.

*Brian P. Burke* (*Edward M. Mahoney* with him) for the
defendant.

O'CONNOR, J. The plaintiff, John J. Barry, formerly a milk
truck driver, seeks damages for a back injury he claims he
sustained as a result of slipping and falling on ice on the de-
fendant's property while he was making a delivery. The case
was tried three times. During the first trial, the defendant
moved for a directed verdict at the close of the plaintiff's

[1]Doing business as East Village Nursing Home.

case and renewed the motion at the close of all the evidence. Those motions were denied and, after the jury answered special questions favorably to the plaintiff, resulting in a judgment for the plaintiff for $673,750, the defendant moved for judgment in its favor notwithstanding the verdict. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). At the same time, the defendant moved for a new trial, Mass. R. Civ. P. 59, 365 Mass. 827 (1974), and for remittitur. The trial judge denied the motion for judgment notwithstanding the verdict, concluding that, although the question was "a close one," "there was enough [evidence] to warrant a reasonable inference that [the defendant] knew or should have known of the icy puddle in the delivery area on the date and at the time [the plaintiff] was injured, . . . and that [the defendant's] failure to remove the puddle or warn against the danger the puddle posed breached the duty of care [the defendant] owed to [the plaintiff]." The judge allowed the motion for a new trial on the grounds that there had been prejudicial error in certain evidentiary rulings and in the plaintiff's closing argument. Accordingly, the judge denied the motion for remittitur as moot.

Following the second trial, which resulted in a mistrial, the third trial resulted in a special jury verdict for the defendant. On appeal, the plaintiff challenges the first trial judge's order granting a new trial, the third trial judge's order bifurcating the trial of liability and damages, and the ruling by the third judge allowing in evidence an accident report that had been completed by the plaintiff's work supervisor. The defendant cross-appeals from the first trial judge's denial of its motion for judgment notwithstanding the verdict. We transferred the case to this court on our own initiative.

After reviewing the evidence presented at the first trial, we conclude that the defendant's motion for judgment notwithstanding the verdict should have been allowed because the evidence, viewed in the light most favorable to the plaintiff, was not sufficient to warrant an inference that the defendant violated the duty of reasonable care that it owed to the plaintiff. See *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984);

*Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 786 (1982); *Abraham* v. *Woburn*, 383 Mass. 724, 727-728 (1981). Specifically, we hold that the evidence did not warrant an inference that the defendant knew, or in the exercise of reasonable care should have known, of the icy condition that caused the plaintiff's fall. Therefore, we affirm the judgment for the defendant that was entered after the third trial.

The evidence would have warranted the jury in finding that before Saturday, February 20, 1988, the plaintiff had been delivering milk to the defendant regularly on Saturdays between 7 A.M. and 8 A.M. On February 20, while delivering milk to the receiving area of the defendant's premises, the plaintiff was injured when he slipped and fell after jumping from the truck. Asked to describe what happened when he reached the ground, the plaintiff testified that "[t]here was a puddle on the ground. When I hit the ground my feet went out from under me, and I fell back." The plaintiff also testified that, after he got up and walked around, he returned to the puddle and discovered that "there was ice under the puddle." He said he knew there was ice under the puddle because he "put [his] foot in there and pushed the water around," and when he did that he felt ice beneath the puddle.

The evidence disclosed that there was a door for deliveries near where the puddle was located. The jury could have found that the defendant's kitchen staff regularly went in and out through the delivery door and that several of the kitchen personnel were working when the plaintiff made his delivery on the day he was injured. There was evidence that the defendant's maintenance worker was not scheduled to work before 8 A.M. on Saturdays. There also was evidence, to which there was no objection at trial, that, after the plaintiff fell, he told a cook to tell the defendant to "clean up the backyard" because it was "a mess" and that he had fallen down, and the cook responded that it was "always a mess back there."

The law imposes on a property owner "a duty to maintain his property 'in a reasonably safe condition in view of all the

circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk.' " *Toubiana* v. *Priestly*, 402 Mass. 84, 88 (1988), quoting *Mounsey* v. *Ellard*, 363 Mass. 693, 708 (1973). As the defendant observes, however, a defendant in a premises liability case is "not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." *Toubiana, supra* at 88, quoting *Gadowski* v. *Union Oil Co.*, 326 F.2d 524, 525 (1st Cir. 1964). It is necessary in determining whether the evidence was sufficient to warrant an inference that the defendant violated its duty of care to consider "whether the jury reasonably could have concluded that, in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken by the defendant, to prevent the accident that occurred." *Toubiana, supra* at 88-89. Thus, a defendant who did not have a reasonable opportunity to discover and remedy a hazardous condition — that is, a defendant who had no actual or constructive knowledge of the allegedly hazardous condition so that it could not reasonably remove, or warn the plaintiff of, the danger — cannot be found to have violated its duty of care. See *Oliveri* v. *Massachusetts Bay Transp. Auth.*, 363 Mass. 165, 166 (1973) (no liability absent evidence sufficient to permit a jury to reasonably infer that the allegedly hazardous condition had existed "long enough so that in the exercise of reasonable care the defendant should have discovered and removed it").

There was no evidence that any of the defendant's employees saw ice under the puddle on the morning of the accident or that the ice was even visible. The plaintiff's own deposition and trial testimony indicated that the puddle appeared to be an ordinary puddle and did not appear to be slippery. Furthermore, there was no evidence concerning the presence of nearby ice or concerning temperature, weather conditions, the length of time the ice had been there, or concerning any prior history of ice forming in the location of the puddle.

Thus, there was no evidence suggesting that the defendant was or should have been on notice that water and ice might accumulate in an unnatural and dangerous manner in its delivery area. Cf. *Sullivan* v. *Brookline*, 416 Mass. 825, 829-830 (1994) ("liability may arise when negligence of a property owner or occupier permits an unnatural and dangerous condition of snow and ice to occur either by itself or in connection with some other defect on the property").

Contrary to the plaintiff's suggestion, the cook's statement that he would tell the defendant to clean up the mess out back, that he would tell the defendant that the plaintiff had fallen down, and that "[i]t's always a mess back there," does not provide support for an inference that the defendant violated its duty to the plaintiff. The defendant is correct in arguing that the statement was too vague and ambiguous to support an inference of actual or constructive knowledge. Furthermore, there was no indication that the cook was referring to accumulations of ice and water in the delivery area in stating that "[i]t's always a mess back there."

In sum, the jury could not reasonably have inferred that the defendant violated its duty of reasonable care by failing to remove the ice or to warn the plaintiff of a potential hazard. The defendant's motion for judgment notwithstanding the verdict should have been allowed after the first jury verdict. This conclusion is consistent with our cases indicating that a landowner's duty of reasonable care "is not violated by a failure to remove a natural accumulation of snow or ice," *Sullivan* v. *Brookline, supra* at 827, since one of the reasons for that rule is that "in this climate . . . a number of conditions might exist which within a very short time could cause the formation of ice . . . without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence." *Aylward* v. *McCloskey*, 412 Mass. 77, 80-81 (1992), quoting *Collins* v. *Collins*, 301 Mass. 151, 152 (1938). We do not resolve this case by considering whether there was evidence indicating that the allegedly hazardous condition was something other than a natural accumulation of ice, however, since the de-

fendant did not raise that argument in its underlying motions for directed verdict. See *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 34 (1991) ("[a]s a motion for judgment notwithstanding the verdict is technically a revised motion for a directed verdict, no grounds for the motion for judgment notwithstanding the verdict may be raised which were not asserted in the directed verdict motion").

*Judgment affirmed.*