**Edward Lawrence ADAMS, Jr., Jane Adams, Plaintiffs,**

v.

**STARWOOD HOTELS & RESORTS WORLDWIDE, INC., Defendant.**

**No. CIV.A.01–11062–RBC [1].**

United States District Court, D. Massachusetts.

March 27, 2003.

---

1. On September 21, 2001, with the parties' consent, this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

Lawrence F. Boyle, Robert J. Gizmunt, Morrison, Mahoney & Miller, Boston, MA, Francis K. Morris, Morris & Howard, Wellesley, Jeanne M. Harney, Morrison, Mahoney & Miller LLP, Boston, MA, for Starwood Hotels & Resorts Worldwide, Inc., Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (# 28)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On May 15, 2001, the plaintiffs, Edward Lawrence Adams, Jr. ("Mr.Adams") and Jane Adams ("Mrs.Adams")(collectively, the "plaintiffs"), filed a complaint against the defendant, Starwood Hotels & Resorts Worldwide, Inc. ("Starwood" or the "defendant"), in Massachusetts Superior Court. (Complaint and Jury Demand, # 3) The case was removed by the defendant to the United States District Court for the District of Massachusetts on June 19, 2001. (Notice of Removal, # 1)

The plaintiffs are Florida residents. (# 3, ¶¶ 1, 2) Starwood is a Maryland corporation with a usual place of business in Hyannis, Massachusetts. (# 27, ¶ 3) Starwood owns and operates a hotel known as the Sheraton Hyannis Resort (the "hotel") located at 35 Scudder Avenue, Hyannis, Massachusetts 02601. (# 3, ¶ 4) On or about February 12, 2000, Mr. and Mrs. Adams were invitees of the hotel while attending a seminar there. (# 3, ¶ 5) On February 12, 2000, during a morning break in the seminar, Mr. Adams walked on an outside patio area (the "patio") at the hotel. (# 3, ¶ 7) He slipped on ice and fell. (Id.) He sustained and suffered serious and permanent injuries as a result of

Susan Merritt–Glenny, Murphy & Murphy, Hyannis, MA, for Edward Lawrence Adams, Jr., Jane Adams, Plaintiffs.

the fall, and he required multiple hospitalizations. (# 3, ¶ 8)

The plaintiffs claim that Starwood had a duty to maintain, inspect, operate and supervise the hotel premises including the patio with due care and in a reasonably safe manner; that Starwood breached its duty by failing to clear the patio area and/or walkways of ice, by failing to warn invitees of danger from ice and by failing to use reasonable care in preventing the injuries suffered by Mr. Adams; and, finally that Starwood's breach was the proximate cause of Mr. Adams' injuries. (# 3, ¶¶ 9–13)

On August 9, 2002, Starwood filed a Motion for Summary Judgment (# 28), along with a Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (# 27) and a Memorandum of Law in Support of Defendant's Motion for Summary Judgment. (# 29) Starwood claims that the plaintiffs have no reasonable expectation of proving that it breached a duty of care owed to the plaintiffs, contending that there is no evidence to establish that the ice upon which Mr. Adams fell was anything but a natural accumulation for which there is no liability. (# 28, p. 1) On November 26, 2002, the plaintiffs filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (# 34) On December 4, 2002, the plaintiffs filed an Assented Motion to Substitute (# 36) and a Revised Memorandum in Opposition to Defendant's Motion for Summary Judgment. (# 38)

The plaintiffs attached to their opposition three affidavits-the affidavit of Dr. Fred Ward, Meteorological Consultant (# 34, Ex. C) [2]; the affidavit of Michele C. Tudor, Professional Engineer (# 34, Ex. D); and the affidavit of Tobe Marsdens (a hotel employee). (# 34, Ex. F)

In their Memorandum in Opposition, the plaintiffs argue that genuine issues of material fact exist as to: whether the defendant acted reasonably under the circumstances; whether the defendant knew or should have known that the defective patio combined with the winter climate created hazardous ice patches; whether the ice which caused Mr. Adams' fall was a natural or an artificial accumulation of ice; and finally whether the ice, if natural, became unnatural due to the passage of time. (# 34, pp. 10–17) On December 6, 2002, the defendant filed a Reply Brief to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (# 37) asserting that it is entitled to summary judgment because the plaintiffs have not presented any admissible evidence to establish that the ice that allegedly caused Mr. Adams' fall resulted from an unnatural accumulation of ice and snow. (# 37, p. 1) On December 11, 2002, the Court heard oral argument on the instant motion. With the record now complete, the defendant's motion for summary judgment is in a posture for resolution. For the reasons discussed below, I will deny the motion without prejudice.

**2.** I note that two of the three affidavits referenced herein, as well as other exhibits, were attached to the plaintiffs' original opposition but not to the revised opposition. For purposes of ruling on the instant motion, I will consider all of the exhibits collectively submitted by the plaintiffs. At the December 11, 2002 hearing on the instant motion, mentioned infra, and in its reply brief (# 37), the defendant asserted an objection to the plaintiffs' reliance on the Ward and Tudor affidavits. Specifically, the defendant argued that these affidavits were inadmissible because the plaintiffs had failed to prove their admissibility subject to the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). I will address the defendant's *Daubert* argument infra. See p. 85.

## II. Facts [3]

The plaintiffs are Florida residents. (# 27, ¶¶ 1, 2) The plaintiffs arrived at the hotel on February 11 or February 12, 2000 [4] to attend a seminar sponsored by the Riverview School. (Id. at ¶ 5; # 38, p. 1) The plaintiffs' disabled son was a student at the Riverview School, located in Sandwich, Massachusetts. (# 38, p. 1) The plaintiffs arrived the hotel at approximately 8:30 a.m. (Id.) Upon arrival, Mr. and Mrs. Adams attended different lectures held in different conference rooms. (Id.) At approximately 10:00 a.m., there was a break in Mr. Adams' seminar, so he decided to take a look at the golf course and Pro Shop located to the rear of the hotel building. (# 27, ¶ 7) The hotel has admitted that there was no sign posted on the doors or anywhere else warning or advising people that they were prohibited from walking on the patio. (# 38, p. 2)

Mr. Adams left the conference room and walked through lobby doors located in the rear of the hotel and proceeded down a concrete walkway. (Id.) He turned right towards the golf course and was entering the patio-that is, the area located between the golf course and the indoor pool. (Id.) The surface of the patio is concrete. (Id.) Upon entering the patio, Mr. Adams slipped on ice and fell; his leg buckled, and he suffered a ruptured patellar tendon which pushed his kneecap up to his thigh. (Id.) Unable to rise, he summoned help from individuals located in the indoor pool area and was taken by ambulance to the Cape Cod Hospital where he was admitted overnight and underwent surgery to repair the patellar tendon. (Id.)

Mr. Adams was in pain when he returned to Florida on February 20, 2000.(Id.) On February 23, he was seen by an orthopedic surgeon at Coral Springs Hospital and was hospitalized when it was discovered that he was suffering from deep vein thrombosis (blood clot), a post-operative complication from the patellar tendon rupture repair. (Id. at p. 3) Mr. Adams was admitted to the hospital on February 23 and was discharged on or about February 27 at which time he underwent extensive physical therapy. (# 38, p. 2) During the second session of therapy, he was given a type of shock therapy to stimulate the muscles in his left leg. (Id.) According to Mr. Adams, this therapy caused him such distress that he had to be readmitted to the hospital for observation. (Id.) He continues to suffer permanent loss of mobility in his left leg. (Id.)

Mr. Adams did not see any snow or ice on the hotel premises, including on the golf course, at anytime prior to his fall. (Id. at p. 2) According to the plaintiffs, on the date of Mr. Adams' fall, it was dry all day. (Id.) Further, Mr. Adams avers that there were no significant snow storms or precipitation in the days preceding his fall which might put one on notice of hazardous conditions. (Id.) The plaintiffs have brought a negligence action to recover for the injuries sustained when Mr. Adams slipped and fell on the ice.[5]

---

3. Unless otherwise stated, the facts herein are undisputed.

4. There appears to be a dispute as to when the plaintiffs arrived at the hotel-either February 11 or February 12, 2000. The plaintiffs' position is that the defendant inadvertently stated that the plaintiffs arrived at the hotel on February 11 and that the fall took place on February 11. (# 38, p. 7) For purposes of deciding the instant motion, I will assume that Mr. Adams' fall occurred on February 12, as set forth by the plaintiffs.

5. Specifically, the plaintiffs have asserted claims for negligence (Count I) and loss of consortium (Count II).

### III. Summary Judgment Standard

Summary judgment is "a device that 'has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways.'" *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1 Cir., 1999) (quoting *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1 Cir., 1991)). The party moving for summary judgment "bears the initial burden, which may be discharged by pointing to the absence of adequate evidence supporting the nonmoving party's case." *Michelson v. Digital Financial Svcs.*, 167 F.3d 715, 720 (1 Cir., 1999). After the moving party has met its burden, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Id.* When considering whether to grant summary judgment, the Court must determine whether:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

In making this assessment, the Court must "accept all reasonable inferences favorable to the nonmovant." *Mullin*, 164 F.3d at 698; *see also Feliciano v. State of Rhode Island*, 160 F.3d 780, 788 (1 Cir., 1998); *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998); *Dykes v. DePuy, Inc.*, 140 F.3d 31, 33 (1 Cir., 1998).

A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a factual dispute is "genuine," the Court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*; *see also Fajardo Shopping Center, S.E., v. Sun Alliance Insurance Company of Puerto Rico, Inc.*, 167 F.3d 1, 7 (1 Cir., 1999) ("[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party"); *De-Jesus-Adorno v. Browning Ferris of Puerto Rico*, 160 F.3d 839, 841–42 (1 Cir., 1998) ("A trialworthy issue exists ... [if] the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'"); *Feliciano*, 160 F.3d at 784; *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 158 (1 Cir., 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also De-Jesus-Adorno*, 160 F.3d at 841–42 ("A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law"); *Fajardo Shopping Center, S.E.*, 167 F.3d at 7 (citing *Pagano v. Frank*, 983 F.2d 343, 347 (1 Cir., 1993)). "Thus the substantive law defines which facts are material." *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1 Cir., 1996) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505).

Rule 56 does not permit the party opposed to the summary judgment motion to rest upon the mere allegations or denials in its own pleadings. See *Mullin*, 164 F.3d at 698 (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1 Cir., 1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct.

1845, 123 L.Ed.2d 470 (1993)) ("Its essential role is to 'pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required.'"). Rather, Rule 56(c):

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. Discussion

The plaintiffs have asserted claims for negligence and loss of consortium against the defendant. "In any negligence cause of action, the plaintiff must demonstrate: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgensen v. Massachusetts Port Authority*, 905 F.2d 515, 522 (1 Cir., 1990)(applying Massachusetts law). In 1973, the Supreme Judicial Court set forth the specific standard owed by a defendant to all visitors lawfully on the defendant's property: the defendant has a duty of "reasonable care in all the circumstances." *Mounsey v. Ellard*, 363 Mass. 693, 707, 297 N.E.2d 43, 51 (1973). Specifically, landowners have a duty to maintain their property "in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of injury, and the burden of avoiding risk." *Toubiana v. Priestly*, 402 Mass. 84, 88, 520 N.E.2d 1307, 1310 (1988)(quoting *Mounsey v. Ellard*, 363 Mass. at 708, 297 N.E.2d at 51).

Under Massachusetts law, in a case in which a plaintiff slips and falls on snow or ice on the defendant's property "there must be a defect, apart from a natural accumulation of water, or ice, or snow, in order to hold a landowner liable for negligence." *Athas v. United States*, 904 F.2d 79, 81 (1990)(emphasis added) In Athas, the plaintiff who slipped on a wet spot outside the defendant post office and fractured her shoulder was unable to recover because there was no evidence that the platform where she slipped was in any way defective or even particularly slippery. *Athas*, 904 F.2d at 81; *see also Aylward v. McCloskey*, 412 Mass. 77, 80, 587 N.E.2d 228, 230 (1992)(summary judgment for defendant affirmed where plaintiff slipped on neighbor's driveway and was injured but no claim was made that the landowner's property was in any way defective).

 Simply put, there is no duty by a landowner to remove a natural accumulation of snow or ice; the law only imposes liability where "some act or failure to act has changed the condition of naturally accumulated snow and ice." *Sullivan v. Brookline*, 416 Mass. 825, 827, 626 N.E.2d 870 (1994)(town not liable because it did not alter the condition of ice on a ramp by removing snow covering the ice). However, an act or failure to act that changes the conditions of naturally accumulated ice and snow and creates a hazard can constitute negligence. *Sullivan*, 416 Mass. at 827, 626 N.E.2d at 872. Thus, landowners may be held liable for ice and snow on their property only if the ice and snow is an "unnatural accumulation." Ice and snow which naturally accumulates can become an unnatural accumulation due to the passage of time. *Sullivan*, 416 Mass. at 829 n. 3, 626 N.E.2d at 873 n. 3; *see also Yanowitz v. Augenstern*, 343 Mass. 513, 514, 179 N.E.2d 592, 593 (1962)(ice left several hours became unnatural); *Willett v. Pilotte*, 329 Mass. 610, 613, 109 N.E.2d 840, 842 (1953)(hard packed ice with ruts indicated ice was unnatural due to the

passage of time); *Mansfield v. Spear,* 313 Mass. 685, 687, 48 N.E.2d 677, 678 (1943)(fact that nearby ice in parking lot was broken up by traffic indicated ice at entrance way had been present long enough to become unnatural).

A natural accumulation of ice and snow can also become unnatural when changed by the foreseeable traffic on the land. *Sullivan,* 416 Mass. at 828 n. 2, 626 N.E.2d at 872 n. 2; *see also Delano v. Garrettson–Ellis Lumber Co.,* 361 Mass. 500, 501, 281 N.E.2d 282, 284 (1972)(muddy ice with tire marks and ruts unnatural); *Thornton v. First Nat'l Stores, Inc.,* 340 Mass. 222, 224, 163 N.E.2d 264, 265 (1960)(thick ice frozen solid to steps and "potted" by foot traffic unnatural).

Having set forth the applicable law and its exceptions, I turn now to the parties' arguments. Starwood asserts that it is entitled to summary judgment on the plaintiffs' claims because: (1) Mr. Adams' fall was due to a natural accumulation of ice, and (2) the plaintiffs cannot show any evidence of negligence on the part of the defendant.

The plaintiffs, on the other hand, argue that there exist genuine issues of material fact as to: whether the ice upon which Mr. Adams fell was unnatural (# 36, p. 7); whether Mr. Adams was walking with due care (Id. at p. 8); plaintiffs' knowledge of the characteristics of the ice (Id.); whether the defendant inspected the patio on the day of Mr. Adams' fall and within a reasonable time before the fall (Id. at pp. 9–10); whether the defendant took reasonable measures to make the patio safe (Id.at p. 10); whether the defendant should have known that certain circumstances would frequently result in frozen water on the patio (Id.); whether the risk of injury was foreseeable (Id.); and whether the defendant failed to exercise reasonable care in failing to warn the plaintiffs that the patio

was off-limits or hazardous. (Id. at p. 15). Moreover, the plaintiffs contend that the defendant's failure to clear ice from the patio from February 6, 2000 through the time of Mr. Adams' fall is evidence of negligence. (Id. at p. 16) Finally, the plaintiffs assert that they have produced evidence proving that the hotel knew of or should have discovered the presence of ice and should have realized that it presented an unreasonable risk of injury to hotel invitees. (Id. at p. 18)

The plaintiffs in this case have an onerous burden to satisfy in order to defeat the defendant's motion for summary judgment. In a slip and fall on ice or snow case, the plaintiff:

> must demonstrate some evidence of negligence by the property owner in order to recover because "[i]t is common knowledge that in this climate…a number of conditions might exist which within a very short time could cause the formation of ice…without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence."

*Aylward, supra,* 412 Mass. at 80–81, 587 N.E.2d at 230 (1992)(quoting *Collins v. Collins,* 301 Mass. 151, 152, 16 N.E.2d 665 (1938)); see also *Sullivan, supra,* 416 Mass. at 830, 626 N.E.2d at 873 (entering j.n.o.v. for defendant because there "was no evidence from which the jury could reasonably have concluded that an act or omission by the [defendant] changed the condition of ice on which the plaintiff fell from its natural state."); *Emmanuel v. The Children's Hosp. Corp.,* 2001 WL 498601, *2, No. T047241 (May 4, 2001, Mass.Mun.Ct.Boston)(granting summary judgment for defendant because plaintiff failed to submit any evidence as to the source of the ice, the existence of a defective condition on the property or any

changing of the sidewalk's natural condition by the defendant). *Compare Jakobsen v. Mass. Port Auth.,* supra, 520 F.2d at 817(affirming judgment for plaintiff because there "was sufficient evidence [in the form of at least 12 complaints] to warrant a determination that the [defendant] had notice of the dangerous [icy] condition of the sidewalk...before plaintiff's accident.").

In order to determine whether the plaintiffs have met their burden of producing at least some evidence on each negligence element (duty, breach, causation), I must examine carefully the evidence submitted by the parties. The following is a summary of the plaintiffs' evidence regarding the ice and the attendant circumstances:

- there were no signs in the lobby of the hotel warning that the patio was off-limits or that hazardous conditions existed. (# 36, Ex. B, ¶ 13);
- prior to his fall, Mr. Adams did not see any ice or snow on the hotel premises. (Id. at ¶¶ 15,18);
- there could not have been any natural snow or ice on the ground in the area of Mr. Adams' fall because all of the snow which had fallen prior to that time, along with any snow piles, had melted. (# 34, Ex. C, ¶ 8);
- about 1/100th of an inch of rain fell near midday on February 11, 2000 in Hyannis. (Id. at ¶ 11);
- the temperature fell below freezing near midnight on February 11, 2000 and remained below freezing until after Mr. Adams' fall on February 12, 2000. (Id. at ¶ 12);
- the 1/100th of an inch of rain that fell on February 11, 2000 would have completely dried between the end of the rain and the time the temperature fell below freezing. (Id. at ¶ 14);

- overnight on February 11, it was too dry to allow dew or frost to form on the area of Mr. Adams' fall. (Id. at ¶ 15);
- 1/100th of an inch of rain would not make the patio slippery. (Id. at ¶ 16);
- the ice in the area of the fall could not have resulted from any natural meteorological process. (Id. at ¶ 17);
- if there were depressions in the area of Mr. Adams' fall, such depressions would become iced over many times every winter. (Id. at ¶ 18);
- the area where Mr. Adams' fall took place is frequently traversed by golf carts and maintenance vehicles. (# 36, Ex. D, ¶ 4);
- between February 12, 2000 and December, 2002, the patio had not undergone any structural changes. (Id. at ¶ 3);
- as of December, 2002 (almost 2 years after Mr. Adams' fall) the patio had "depressions" in its surface. (Id. at ¶ 4);
- as of December, 2002 (almost 2 years after Mr. Adams' fall) the patio had a lack of "positive pitch" which causes liquids to sit there, rather than running off and being drained off. (Id. at ¶ 5);
- in December, 2002, water from a golf course irrigation system spouted down onto the patio and pooled in the depressions on the patio. (Id. at ¶ 6);
- in December, 2002, the golf course irrigation system diverted surface water from its natural course onto the patio. (Id. at ¶ 7);
- defective grading caused an unnatural accumulation, retention and frequency of pooled water to form icy patches on the patio; such a condition would have occurred at the time of Mr. Adams' fall and numerous years prior thereto. (Id. at ¶ 9);

- the ice upon which Mr. Adams fell was "hard and solid." (# 34, Ex. E, ¶ 9);
- the ice upon which Mr. Adams fell "was so thick that it noticeably raised Mr. Adams up on a slant above the underlying concrete surface of the patio." (# 34, Ex. F, ¶ 4);
- after Mr. Adams' fall, the area where he fell was sanded by the hotel. (# 34, Ex. G, p. 2)[6];
- the defendant failed to inspect the patio on February 12, 2000 and days prior thereto. (# 34, Ex. H, p. 16);
- the last time that snow and ice was cleared from the patio (prior to Mr. Adams' fall) was on February 4, 2000. (# 34, Ex. L, No. 11);
- on February 6, 2000, a hotel guest fell on the "parking lot side of the Hotel" so the hotel put salt on the patch of ice where he fell.[7] (# 34, Ex. K);
- there are several "possible sources for the ice" such as hotel employees using the dumpster, the draining of a hot tub, the placing of ice sculptures outside, roof repairs, or the cleaning of a van. (# 34, Ex. I, pp. 45, 50, 55, 57).

The defendant counters some of the plaintiffs' evidence by pointing to the lack of evidence on several important points: there "is no evidence that any act by the defendant altered or changed the condition of naturally accumulating snow and/or ice" (# 29, p 4); and there is no evidence "as to the size, shape, color, thickness or slickness of the ice or the source of the ice." (Id. at p. 5)[8]

In sum, taking the evidence in the light most favorable to the plaintiffs, and drawing all reasonable inferences from those facts, a jury could find that the ice was not as a result of a natural accumulation. The jury could believe the testimony of the witness Tobe Marsdens that the "ice [upon which Mr. Adams fell] was so thick that it noticeably raised Mr. Adams up on a slant above the underlying concrete surface of the patio" and "[o]ther than the ice upon Mr. Adams fell, I did not see any other ice, or snow in the area." (# 34, Exh. F, ¶¶ 4, 5) The jury could credit the testimony of Dr. Fred Ward that by February 1st, any snow which had fallen in January had completely melted as had any piles of snow, that the only snow in February before February 12th was a few light snow flurries between the 3rd and 5th of February, that this would have melted in the relatively warm weather of February 7th and that the 1/100 inch of rain which fell on midday on February 11th would have completely dried up by midnight on February 11th. (# 34, Exh. C, ¶¶ 8–14) From this evidence, the jury could reasonably infer that the thick patch of ice upon which the plaintiff fell was not a natural accumulation.

The plaintiffs rely on a second theory in order to defeat summary judgment. They claim that there is evidence that there was a defect on the defendant's property that created the unnatural accumulation of ice and that their theory comes within the proposition that "to establish liability for injuries caused by a slip and fall on snow or ice it is crucial for the plaintiff to establish that the defendant [by its action or inaction] created the unnatural accumulation of ice or snow." *King v. Cantillon*, 2002 WL 1923860, *3, No. 012814

---

6. I note that this evidence in the form of an incident report and its authenticity was not verified by an affidavit.

7. I note that this evidence in the form of an engineering log and its authenticity was not verified by an affidavit.

8. The statement that there is no evidence as to the thickness is not accurate. See # 34. Exh. F, ¶ 4.

(Mass.Super., July 12, 2002)(citing *Sullivan*, 416 Mass. 825, 827, 626 N.E.2d 870, 872). The evidence upon which they rely for this second theory is the opinion of Michele C. Tudor, a professional engineer. (See # 34, Exh. D) She opines that the patio is defective because it lacks a "positive pitch" which causes water falling on the patio to form pools rather than draining off of the patio.[9] The problem with this theory is that even if the jury credited it, the testimony of Dr. Ward would seem to lead to the conclusion that there was insufficient precipitation in the days immediately prior to February 12th for any "pools" to have formed. However, Dr. Tudor's evidence may be relevant on the question of whether there was a defect in the patio of which the defendant should have been aware which would have required a reasonable person to inspect the patio for accumulation of ice or snow resulting from the defect.

Without the affidavits of Dr. Ward and Ms. Tudor (the "expert affidavits"), the plaintiffs would not have established any genuine issue of material fact, and I would be required to allow the defendant's motion for summary judgment. However, with the expert affidavits, the plaintiffs have put forth enough evidence to survive summary judgment. In other words, the plaintiffs have "established at least the proverbial 'toehold' required to avoid summary judgment." *Rossi v. Oceanview Country Club,* 1997 WL 733844, *3, No. 9450 (Mass.App.Div., Nov. 21, 1997) (citations omitted).

But, as previously stated, the defendant has objected to admission of the expert affidavits on the ground that the expert opinions are "unreliable under the Daubert standard and lack proper foundation as required by Rule 56 of the Federal Rules of Civil Procedure." (# 37, p. 3) In order to determine whether the expert affidavits are admissible, the Court would have to conduct a Daubert hearing. Accordingly, I will deny the defendant's motion for summary judgment without prejudice for the defendant to renew its motion after a Daubert hearing is held to determine the admissibility of the expert affidavits.

### V. Conclusion and Order

For the aforementioned reasons, it is ORDERED that the Defendant's Motion For Summary Judgment (# 28) be, and the same hereby, is DENIED without prejudice.

---

9. She also opines that there are depressions in the paved surface of the patio which have been caused by golf carts and maintenance vehicles driving over the patio. (# 34, Exh. D, ¶ 4) The problem with this testimony is that Ms. Tudor observed these depressions over two years after the plaintiff's fall, and there is no evidence that they were present in February, 2000. This is in contrast to her testimony about the lack of "positive pitch" since the evidence is that the patio has not undergone any structural changes from the time of Mr. Adams' fall to the date of her inspection. (Id.)