David **GOLDMAN**, et al.,
Plaintiffs, Appellants,

v.

**UNITED STATES of America,**
Defendant, Appellee.

No. 85–1619.

United States Court of Appeals,
First Circuit.

Argued April 10, 1986.

Decided May 7, 1986.

Rehearing Denied June 2, 1986.

Margaret A. O'Reilly, with whom Budd, Wiley & Richlin, P.C., Boston, Mass., was on brief, for plaintiffs, appellants.

Evan Slavitt, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston,

Mass., was on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

David Goldman, his wife Vivian Zamel, and their children Michael and Sarah, brought an action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* (1982), claiming that the negligence of the United States in failing properly to maintain the plaza by the John F. Kennedy Federal Building in Boston ("JFK Plaza") caused Goldman to slip and fall on a patch of ice and injure himself. The United States District Court for the District of Massachusetts found for the United States, ruling that while defendant was negligent in failing to clear an ice patch, Goldman's own negligence was the sole cause of his injury. The court denied plaintiffs' motion for a new trial. We affirm.

I.

On Saturday, February 12, 1983, there was a blizzard in the Boston area resulting in almost a foot of snow. Three federal employees from the General Services Administration ("GSA") worked approximately 24 hours each over the weekend to clear JFK Plaza of snow. The district court found that as of Monday morning, the day of the accident, the plaza was "fine, clear, dry, well plowed." There remained, however, one smooth patch of ice, about eight square feet in size (about four feet by two feet), next to a "cut-out" portion of the plaza which was unpaved. It was the practice of GSA employees to pile snow in the cut-out where it could melt into the ground; apparently some of the piled-up snow had melted and then frozen, creating the ice patch. When two GSA employees inspected the plaza at separate times between 6:30 a.m. and 7:15 a.m. on Monday, February 14, they did not see any ice patch.

Goldman, a lawyer then in his late thirties, arrived at Government Center around 8:00 on Monday morning. The court found that he was "suitably dressed, suitably booted, aware of the blizzard, aware of the hazards of travel and of the conditions...." After walking across City Hall Plaza, which was unplowed and covered with snow and ice, Goldman noticed that JFK Plaza seemed dry and clear, and began walking in a straight line across the plaza to the entrance of the JFK Building. Goldman apparently stepped on the ice patch, then slipped and fell, breaking his leg. Plaintiffs filed this action on September 19, 1984, seeking $250,000 for Goldman's lost earnings, medical expenses, and pain and suffering, $100,000 for the wife's loss of consortium, and $12,500 for each child's loss of parental society.

The case was tried without a jury. After plaintiffs presented their evidence on liability, the court entered judgment for the United States. The court found that the government was negligent in that it knew or should have known of the ice patch when JFK Plaza was inspected early Monday morning, and should have sanded or removed it. Nonetheless, the court concluded that Goldman's own negligence in failing to watch where he was going was so great that it "was forced to conclude that he was the sole cause of his own injury." None of the plaintiffs, therefore, could recover. When plaintiffs' motion for a new trial was denied, they brought this appeal.

II.

The parties stipulated that JFK Plaza, where Goldman fell and injured himself, was under the ownership, custody and control of the United States, and that GSA was responsible for maintaining the plaza. A claim against GSA, a federal agency, is treated as an action against the United States, since any judgment must be paid from the public treasury. *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). Under the Federal Tort Claims Act, the federal government is liable "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674

(1982). In deciding the "manner" and "extent" to which a private individual would be liable, "the law of the place where the act or omission occurred" must be applied. 28 U.S.C. § 1346(b) (1982). The relevant law here is that of Massachusetts.

In Massachusetts "[a] landowner owes a single duty of reasonable care to all persons lawfully on his premises." *Doherty v. Town of Belmont*, 396 Mass. 271, 274, 485 N.E.2d 183, 185 (1985); *see also Brillante v. United States*, 449 F.Supp. 597, 599 (D.Mass.1978); *Mounsey v. Ellard*, 363 Mass. 693, 708, 297 N.E.2d 43, 52 (1973).[1] Ostensibly applying this standard, the district court found that the United States, as landowner, had done "the best job it could" to the extent that it plowed, salted, sanded, and scraped the plaza, clearing it almost entirely of snow and ice within a short time after a major snowstorm. The court concluded, nonetheless, that the United States was negligent because it had failed during inspection on the morning of the accident to spot and to clear an ice patch from the plaza, when it "knew or should have known of the presence of this patch of ice." A landowner's duty of reasonable care, the court seemed to believe, would require the United States to remove every trace of ice from its premises so long as a reasonable inspection could have discovered it. Because we think the court imposed on the United States a duty greater than is imposed upon a private landowner under Massachusetts law, we conclude that the court erred in its finding of negligence.

█ The relevant inquiry is whether the government's failure to remove the last ice patch from JFK Plaza violated its duty of reasonable care under the circumstances.

That is, did it "use due care to keep the premises in a reasonably safe condition, or at least to warn patrons of any dangers that might arise from such use, which are not likely to be known to them, and of which the defendant knows or ought to know"? *Brillante,* 449 F.Supp. at 599; *Oliveri v. Massachusetts Bay Transportation Authority*, 363 Mass. 165, 166–67, 292 N.E.2d 863, 864 (1973); *Greenfield v. Freedman,* 328 Mass. 272, 275, 103 N.E.2d 242, 244 (1952). Relying on the district court's own findings of fact, and in light of existing precedents, we hold as a matter of law that the government did not breach its duty of maintaining the plaza in a reasonably safe condition under the circumstances.

Immediately after the blizzard three GSA workers labored overtime to clear JFK Plaza of snow. They succeeded so well that the entire plaza was "absolutely clear" of snow and ice (with the exception of one small ice patch), in sharp contrast to the adjacent City Hall Plaza which remained treacherous. The district court found there was ample room for safe pedestrian passage across JFK Plaza without stepping on the ice: Goldman "could have walked on ... 6100 clear feet of plaza," and "[h]e could have walked one foot or two feet to the left ... and never touched the [ice] patch." Where a landowner provides a reasonably safe "route of access" to its premises, courts have generally declined to find a breach of a duty of due care under Massachusetts law. *See Gadowski v. Union Oil Co. of Boston,* 326 F.2d 524, 525 (1st Cir.1964) (plaintiff did not have to traverse a danger or adopt an inconvenient alternative but could follow the ice-free

---

**1.** A Massachusetts "county, city or town," however, is not "liable for an injury or damage sustained upon a public way by reason of snow or ice thereon, if the place at which the injury or damage was sustained was at the time of the accident *otherwise reasonably safe and convenient* for travelers." Mass.Gen.Laws ch. 84, § 17 (1984). *See, e.g., Gamere v. 236 Commonwealth Ave. Condominium Ass'n,* 19 Mass.App. 359, 363, 474 N.E.2d 1135, 1137, *rev. denied,* 394 Mass. 1103, 477 N.E.2d 595 (1985). The exist- ence of this statute may help explain why the adjacent City Hall Plaza had not yet been plowed or otherwise cleared of snow at the time of Goldman's accident. Because the liability of the United States under the Federal Tort Claims Act is like that of a private individual, the federal government is not protected by the Massachusetts snow and ice statute which would have barred Goldman's claim had he fallen on ice on a city-owned sidewalk adjacent to JFK Plaza.

portion of the path); *Brillante*, 449 F.Supp. at 600 (plaintiff could step over or walk around scattered ice patches in defendant's parking lot); *Greenfield*, 328 Mass. at 275, 103 N.E.2d at 244 (where storekeeper furnished adequate walkways cleared of fallen leaves, he was not required "to keep the whole width of the walks free from all leaves").

■ The district court, moreover, concluded that the ice was visible and obvious, and that Goldman thus should have seen it,[2] especially since it was located right next to the only snow pile on JFK Plaza, which the court found was "the only snow piled in the area that could have melted," and thus "the only possible area where the hazard could exist...." The law is well established that a landowner has no duty to warn when a potentially dangerous condition is open and obvious. *Gadowski*, 326 F.2d at 525; *Brillante*, 449 F.Supp. at 599; *Letiecq v. Denholm & McKay Co.*, 328 Mass. 120, 122, 102 N.E.2d 86, 88 (1951).

Plaintiffs contend, however, that the very fact that JFK Plaza looked "as clear as [on] a June day" created the deceptive impression that it was totally safe, thus making the presence of the ice patch less than obvious. But a small ice patch on the ground during a New England winter cannot be said to be unexpected, particularly when it had snowed heavily over the weekend and Goldman had just negotiated an ice-spotted City Hall Plaza. As the district court observed, dealing with snow and ice is just a part of "winter life in Boston." Penalizing a landowner for doing a better job of clearing snow than the law requires would, as the court found, send a signal that a landowner should "do less than a

good job in order to keep travelers alert to the danger."

■ We believe that to find the landowner negligent for failure to clear up the one remaining small ice patch on the plaza " 'would be to establish an unreasonable standard of perfection rather than to enforce the recognized standard of due care....' " *Greenfield*, 328 Mass. at 275, 103 N.E.2d at 244 (*quoting Rogers v. Cambridge Taxi Co.*, 317 Mass. 578, 580, 59 N.E.2d 89, 90 (1945)); *accord Brillante*, 449 F.Supp. at 600. In *Gadowski*, this court refused to find the owner of a pier negligent simply because he had failed to sand one small icy patch on the pier when plaintiff should have seen and avoided it. "A landowner," we said, "is not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate." 326 F.2d at 525. The district court in *Brillante*, applying Massachusetts law, also held that a parking lot with scattered patches of ice was nonetheless reasonably safe since the patches were visible and easily avoidable. The instant case fits squarely within these precedents.

■ The cases cited by plaintiffs are inapposite. In *Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810 (1st Cir. 1975), the entire sidewalk area in front of an airline terminal was covered with a solid sheet of glazed ice, making entrance into the building unacceptably dangerous, particularly since the lighting was poor.[3] *Schallinger v. Great Atlantic & Pacific Tea Co.*, 334 Mass. 386, 135 N.E.2d 655 (1956), also involved ice located in front of the doorway to a building. *See also*

---

**2.** In concluding that if Goldman had looked where he was going he would have seen the ice patch, the district court noted that "on this absolutely clear [plaza]—there [was] one patch of ice, eight feet square, described by [a GSA worker] as if someone [had] dropped a glass of water, and [Goldman] walked over it. No one testified that it was hidden by any drifting snow or that it was not obvious in any way. It's right there, and he walked right over it." The court

also found that a picture of the accident site that was admitted into evidence "shows the patch, and what the camera shows the eye should see."

**3.** The Port Authority had received over 100 calls during the day about icy conditions at the airport and knew that three people had already fallen on icy sidewalks by the time of plaintiff's accident.

*Phipps v. Aptucxet Post #5988 V.F.W. Building Association, Inc.*, 7 Mass.App. 928, 389 N.E.2d 1042 (1979) (parking lot found to be in a hazardous condition because it was "like a sheet of ice"); *Krejmas v. Cumberland Farms Dairy Stores, Inc.*, 4 Mass.App. 811, 347 N.E.2d 690 (1976) (defendant responsible for maintaining the entrance to its store reasonably free of snow and ice). Here JFK Plaza was reasonably safe for pedestrians despite the presence of a small (but obvious and easily avoidable) patch of ice. Thus the district court had no need to make inquiry (on the apparent assumption that the government had a duty to remove that ice) into whether defendant had a "reasonable opportunity to become informed of the danger and to take measures to remedy it," *Deagle v. Great Atlantic & Pacific Tea Co.*, 343 Mass. 263, 264, 178 N.E.2d 286, 287 (1961).

The district court itself was apparently troubled by its finding that the United States had been negligent. Despite so finding, the court proceeded to conclude that Goldman's own negligence was the sole proximate cause of the accident. The United States, the court observed, neglected to find and to deal with the ice patch, "but that [negligence] didn't cause the accident." "[B]ut for [Goldman's] negligence, there would not have been" an accident, and the government "was not responsible for the injury in any way." Thus none of the plaintiffs could recover.

We think the district court erred, technically, in its reasoning.[4] While the court sought to justify its finding for defendant by stating that the government's negligence did not "cause" the accident in any way, it was the government's failure to sand or remove the ice that amounted to negligence, if any, and the ice, surely, was a proximate cause of the injury. The kind of slip and fall accident that occurred was foreseeable, and could not have occurred but for the presence of the ice. Clearly the government's actions, if negligent, played a substantial role in bringing about Goldman's injury. *See Tritsch v. Boston Edison Co.*, 363 Mass. 179, 182, 293 N.E.2d 264, 267 (1973); *Restatement (Second) of Torts* § 431(a) (1965).

What the court more likely had in mind, we believe, was that the government simply did not violate any legal duty of care to plaintiff. If so, it was not negligent at all. Because we find that the United States did not breach its duty of reasonable care, and thus was not negligent, we need not address the other arguments raised by plaintiffs on appeal.

*Affirmed.*

4. To be sure, the district court's denial of recovery to Goldman himself can be readily upheld under the Massachusetts law of comparative negligence: the court could properly have found, and doubtless did find, that Goldman's negligence was "greater than the total amount of negligence attributable" to defendant, and thus a bar to his own recovery. Mass.Gen.Laws ch. 231, § 85 (1984). But under Massachusetts law as it now stands, Goldman's contributory negligence would not bar his wife and children from recovery—assuming the United States were actually negligent here. *See Feltch v. General Rental Co.*, 383 Mass. 603, 421 N.E.2d 67 (1981) (holding that a claim for loss of consortium is *independent* of the injured spouse's claim, thus plaintiff's recovery should not be reduced by the amount of injured spouse's contributory negligence). *Cf. Christie v. Maxwell*, 40 Wash.App. 40, 696 P.2d 1256 (1985) (62.5 percent contributory negligence of husband does not reduce wife's damages for loss of consortium); *Lantis v. Condon*, 95 Cal.App.3d 152, 157 Cal.Rptr. 22 (1979) (wife's recovery for loss of consortium not reduced by husband's contributory negligence though he was 80 percent negligent).