Jeanne VERGE, Plaintiff,

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civil Action No. 94–10971–PBS.

United States District Court,
D. Massachusetts.

Sept. 17, 1996.

**16.** See footnote number 13.

Brian S. McCormick, Orlando & Associates, Gloucester, MA, for plaintiff.

Thomas E. Kanwit, Asst. U.S. Atty., Boston, MA, for defendant.

SARIS, District Judge.

## REPORT AND RECOMMENDATION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 17)

August 20, 1996

BOWLER, United States Magistrate Judge.

Pending before this court is a motion for summary judgment filed by defendant United States Postal Service ("defendant").[1] (Docket Entry # 17). After conducting a hearing (Docket Entry # 26), this court took the motion for summary judgment under advisement.

### FACTUAL BACKGROUND

Plaintiff Jeanne Verge ("plaintiff") filed this negligence action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) & 2671–2680, against defendant alleging that she slipped and fell on gravel on the stairway leading to the front entrance of the Gloucester Post Office ("the post office") in Gloucester, Massachusetts. Defendant submits that plaintiff cannot show that there was gravel on the stairway at the time and place where plaintiff fell. Defendant also maintains that gravel might not constitute a defect or hazard under Massachusetts law. Defendant additionally argues that there is no evidence that defendant knew or should have known of the presence of gravel on the stairway. Defendant further contends that the gravel was open and obvious and therefore did not require a special warning to post office patrons. Finally, defendant submits that the post office regularly posted warnings for its patrons to use the handrails but that plaintiff failed to heed this advice. (Docket Entry # 18).

Viewing the record in plaintiff's favor, including all reasonable inferences therefrom, this court finds the following facts solely for purposes of summary judgment.

Plaintiff, a longtime resident of Gloucester, was visiting the Gloucester Post Office ("the post office") in Gloucester, Massachusetts on June 3, 1992. Plaintiff generally visits the post office once a week or once every two weeks for either personal or work related reasons. On June 3, 1992, she was making a trip to the post office on behalf of her employer.

After walking up the front stairway and entering the front entrance, plaintiff went to a service window[2] and purchased a roll of stamps. David Paul White ("White"), a distribution window clerk at the Gloucester post office, testified that he waited on plaintiff on the day of the accident.[3] After plaintiff purchased a roll of stamps, she left White's window.

As plaintiff was exiting the front entrance of the post office she passed Mary Scola ("Scola"), a resident of Gloucester for more than 30 years, who was on her way into the post office. Scola and plaintiff knew each

1. Although defendant represents that the proper party is the United States of America, defendant has not filed a motion to substitute.

2. In or around June 1992 the post office had three service windows and, exclusive of mail carriers, employed an estimated 14 individuals in clerical positions. (Docket Entry # 18, White Deposition).

3. White remembers being at work on the day plaintiff had an accident but does not remember the date as being June 3, 1992.

other on a casual basis from attending the same church. Except for exchanging a greeting when passing plaintiff on the street, Scola and plaintiff did not socialize with each other on a regular basis. (Docket Entry # 18, Scola Deposition & Verge Deposition).

Scola, who goes to the post office every day, surmises that it must have been after 10:00 a.m. because she usually retrieves her mail from the post office at that time. The weather was gray and windy but not raining. (Docket Entry # 18, Scola Deposition & Verge Deposition).

Scola was in the process of entering the post office by walking up the right side of the steps leading to the front entryway. The steps leading to the front entrance are sectioned into three parts and also have handrails. At the time Scola was walking up the steps she saw plaintiff going down the steps wearing sneakers. After plaintiff passed Scola on the steps and with Scola's back turned to plaintiff, Scola heard plaintiff scream. Scola did not witness the actual fall because her back was turned away from plaintiff. She nevertheless testified that before the fall plaintiff "was almost towards the bottom" of the stairway and that she fell "about three steps." At the time she heard the scream, Scola was about to enter the post office lobby.

After Scola heard plaintiff scream, she turned and saw that plaintiff had fallen. According to Scola, plaintiff was lying on her back stretched across the area from the front entrance. She stated that plaintiff's head was by the door and her feet were by the steps.[4]

Plaintiff testified that she fell on the stairs near the top of the stairway. Her feet came out from under her and her back fell onto the stairway. At the time of the accident, she was not holding onto the handrail which begins on the flat part of the entryway.[5] When her feet began to fall out from under her, plaintiff tried, unsuccessfully, to hold onto the handrail.

Plaintiff described her fall as sliding sideways down the stairway and landing at the bottom of the stairway with her body parallel to the rising stairs.[6] After the fall, she felt pain in her ankle but does not recall experiencing pain elsewhere in her body.

Plaintiff believes that after she fell but while still at the post office she said, "I slipped on the gravel." [7] At the time she also noticed gravel in her hair. Plaintiff does not remember seeing gravel on the upper portion of the stairway on June 3, 1992. She testified that she "didn't look. [She] was just going."

Plaintiff nevertheless has observed gravel on the sidewalk in front of the post office both before and after the accident. She paid little, if any, attention to the existence of gravel on the steps leading into the post office prior to the accident. She further acknowledged that there was nothing to prevent her from seeing the gravel on the stairs before she fell.

After Scola turned and saw plaintiff on the ground, she advised one of the tellers that someone had fallen and then went down to where plaintiff was lying. She told plaintiff to stay calm and that help was "going to come."

When the postmaster came down,[8] Scola testified that she "told him there's a lot of

---

**4.** According to White, plaintiff was lying on the bottom level of the stairway. White testified that when looking down from the post office to the street, plaintiff was lying on the left side of the stairway. White additionally described plaintiff's head as towards the stairs and her feet as closer to the door.

**5.** She also stated that she was carrying her pocketbook and wearing glasses. Scola did not notice that plaintiff had a pocketbook when she went to her assistance.

**6.** Scola stated that plaintiff's body was positioned up and down the stairs as opposed to across the steps.

**7.** Plaintiff also noted, however, that she does not remember saying anything to anyone after she fell. Solely for purposes of summary judgment, this court considers these statements as present sense impressions and/or excited utterances when viewing the record in plaintiff's favor.

**8.** Although Scola initially described the man as the postmaster, she later testified that she was not sure that the man was the postmaster. She

gravel and dirt here, and I think that's why she fell." When asked to recite the exact conversation at her deposition, Scola stated that, "I told him that everything was very dirty and there was a lot of rocks, little pebbles, like.... I said I don't think she would have fallen if there wasn't so much gravel there, and I do notice that when I go in." [9]

Plaintiff cannot remember whether she saw any gravel on the stairway during the visit immediately preceding the June 3, 1992 visit.[10] Scola, however, testified that there was a lot of gravel on the stairs and that there was always gravel on the front entrance.[11] She noted that oftentimes there is no rug at the front entrance. Her exact testimony is as follows:

Q. When on this particular day [June 3, 1992] did you first observe gravel and sand on the steps?

A. Going in this, the front entrance, you know, like, it's always there and then when I went up, there's a lot of gravel in the stairs too; and the front entrance, sometimes there's not a rug there either.

Q. So, you observed it as soon as you walked into the door, you saw gravel and sand?

A. Yes.

Later during her deposition, Scola confirmed that the gravel was always on the stairs. While Scola did not know how long the gravel was on the steps on the day of the accident, she surmised that it must have been

there "because there was a little bit piled up." (Docket Entry # 18, Scola Deposition).

She described the gravel as tiny, hard rocks smaller than a BB but larger than a grain of sand. Plaintiff similarly characterizes the gravel as the size of peas in early spring. When asked to describe in even greater detail the gravel and the sand on the day of the accident, Scola testified as follows:

It's there, the gravel, you know what I mean, and it's not piled up, and sometimes you can't even see it unless you go on it. You know what I mean, it's just there, and sometimes it's mostly, you know, on the steps but mostly down; but I might catch myself, but there is a lot of gravel. I don't mean a lot, lot, but it's there, scattered....

(Docket Entry # 18, Scola Deposition).

Meanwhile, one or two minutes after White finished assisting plaintiff with her purchase, he testified that "a customer came to the window [and] told me that a woman had fell on the stairway."[12] White then notified a supervisor.[13] After getting another employee to replace him, White went to the stairwell and observed plaintiff lying down at the bottom of the stairwell. White also saw a woman, possibly Scola, with plaintiff but he does not remember seeing his supervisor. He describes the following conversation between himself and plaintiff:

I asked her what happened. She told me that she had slipped on the stairs and fell. I asked her, "What hurts?" She says, "I hurt my leg, and I hit the back of my head."[14]

described his appearance as having a white shirt and tie and that she did not know his name.

9. The fact that Scola testified that she noticed the gravel on her way into the post office distinguishes, in part, the facts of plaintiff's case from the facts at issue in the unpublished Superior Court opinion, *Smith v. Penna–Breault, Inc.*, No. 93–1689 (Hampden, SS, April 19, 1995), wherein a witness viewed the marinara sauce on the floor at least six minutes prior to the plaintiff's slip and fall.

10. Plaintiff also cannot recall the date of this visit.

11. Construing the record in plaintiff's favor and thus, notwithstanding other contradictory evidence, there was gravel on the stairway which was quite small and difficult to see.

12. This court does not consider White's recitation of what the customer said for the truth of the matter asserted. Rather, this court considers the statement for purposes of knowledge.

13. The post office has a postmaster, an assistant postmaster, a supervisor for the clerks, a supervisor for the mail carriers and a supervisor for the stamp stocks. White testified that he could have notified any one of these individuals.

14. Solely for purposes of summary judgment, this court considers these statements as present sense impressions, excited utterances and, with reference to the hurt in her leg, as statements of plaintiff's then existing physical condition. F.R.E. 803(1)-(3). Viewing the record in plaintiff's favor and having considered the testimony that White completed "a line of customers" be-

Although plaintiff remembers seeing White, she does not recall saying anything to him or to anyone else after her fall.

White did not observe any visible blood or swelling on plaintiff's body. He brushed some dirt away from where she was lying and advised her not to get up.

White remained with plaintiff and a short time later two firemen arrived by ambulance. After checking plaintiff's vital signs, the firemen placed plaintiff on a stretcher and transported her to a hospital emergency room by ambulance. White did not make any particular observations about the condition of the stairwell on the day of the accident. White then returned to his service window. (Docket Entry # 18, White Deposition).

In the past, Scola has observed signs advising patrons to use the handrails. She does not, however, remember seeing such signs on June 3, 1992.[15] Plaintiff also could not remember whether she saw any signs advising patrons to, "Please use the handrails" prior to the accident. Plaintiff is also not aware of any signs facing patrons as they leave the post office and go down the stairway from the front entrance. She does, however, remember viewing such signs during visits to the post office. As noted above, plaintiff was reaching for rather than holding onto the handrails at the time of the fall. (Docket Entry # 1.8, Scola Deposition & Verge Deposition).

Plaintiff never informed anyone at the post office that there might be an unsafe condition due to the gravel on the steps. (Docket Entry # 18, Verge Deposition). Prior to the accident, Scola had not complained to the postal service about the condition of the stairs leading to the front entryway. At times, when she saw a janitor, Scola would tell him "how nice it looks" and that "[t]hey should clean the stairs once in a while." (Docket Entry # 18, Scola Deposition).

At an undetermined time between 4:00 a.m. and 6:00 a.m. on June 3, 1992, one or more janitors swept and cleaned the front stairway. The postmaster also checks the front stairway on his way into work each day. (Docket Entry # 18, Answers to Interrogatories).

According to White, four custodians work at the post office. White generally cannot view the custodian cleaning the lobby each morning except when he uses the vending machine in the lobby. White can only see a small corner of the front stairway from his service window. At times, albeit from this limited vantage point, White has seen the custodian sweep the front stairway. In the past, White has viewed the custodians mop the lobby when it is wet. In June 1992 the clerk supervisor was in charge of the custodians.

During his ten years as an employee at the post office, White is not aware of any other falls on the outside steps of the post office. He has seen one customer fall inside the lobby in a puddle during a snowstorm. (Docket Entry # 18, White Deposition).

At an undetermined time after the accident, Scola saw plaintiff in the street and stopped to ask her how she was doing. Scola told plaintiff that if she needed any help, she should let Scola know. Thereafter, according to Scola, plaintiff did not contact Scola. Plaintiff, however, thought that Scola telephoned her once at home to ask how she was feeling. (Docket Entry # 18, Scola Deposition & Verge Deposition).

Plaintiff also remembers receiving a telephone call from a post office employee while she was in the emergency room at the hospital. She does not recall the substance of the conversation. She also cannot remember whether she spoke with a nurse at the hospital about the accident. Plaintiff also recalls receiving a telephone call at home from an individual from the postal service. She believes she discussed the accident but does not remember any specifics of the conversation.

After the accident, plaintiff can no longer walk to work. Before the accident, she

---

fore leaving his station, it was a relatively short period of time between plaintiff's fall and White's arrival at the scene of the fall. It is the exclusive province of the trial judge to decide whether to admit these statements at trial.

15. Nor does Scola recall if there is a sign advising patrons to use the handrails as of November 16, 1994, the day of her deposition.

walked to work for a 20 minute time period approximately once a month. She can no longer walk on uneven surfaces. She avoids shopping malls because she cannot walk for any significant length of time. She also limits her housekeeping activities and has difficulty climbing stairs. Plaintiff further testified that she presently experiences pain in her ankle. She does not take medication for the pain in her ankle but did have surgery on her ankle.[16] She remained out of work for a three month period after the accident. She resumed full time employment after the three month time period.

Plaintiff has a history of mild arthritis in her hands, wrists and feet.[17] She takes medication for the condition which obviates any difficulty walking. She testified that the arthritis did not impact her ability to walk prior to the accident. She also did not experience any pain in her ankles before the accident.

## DISCUSSION

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corporation,* 63 F.3d 32, 36–37 (1st Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996) (quoting Rule 56, Fed.R.Civ.P.). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Likewise, "'material' means that a contested issue of fact has the potential to alter the outcome of the suit under the governing law if the dis-

pute over it is resolved favorably to the nonmovant." *Smith v. F.W. Morse & Company, Inc.,* 76 F.3d 413, 428 (1st Cir.1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." *Dow v. United Brotherhood of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993) (citation omitted). "As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Northwest Airlines, Inc.,* 56 F.3d 313, 315 (1st Cir.1995).

Under the FTCA, "the federal government is liable 'in the same manner and to the same extent as a private individual under like circumstances.'" *Goldman v. United States,* 790 F.2d 181, 182–183 (1st Cir.1986). Furthermore, it is "'the law of the place where the act or omission occurred' [which] must be applied." *Goldman v. United States,* 790 F.2d at 183.

Ordinarily "[i]n any negligence cause of action," the plaintiff must demonstrate: "(1) a legal duty owed by [the] defendant to [the] plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." *Jorgensen v. Massachusetts Port Authority,* 905 F.2d 515, 522 (1st Cir.1990) (applying Massachusetts law). With respect to the existence of a duty, Massachusetts imposes on defendant "a duty to maintain [its] property 'in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury to others, the seriousness of the injury, and the burden of avoiding the risk.'" *Toubiana v. Priestly,* 402 Mass. 84, 520 N.E.2d 1307, 1310 (1988) (quoting *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 52 (1973)); *accord Young v. Atlantic Richfield Company,* 400 Mass. 837,

---

**16.** Plaintiff's deposition testimony does not reflect the date of the surgery which presumably was after the accident. Plaintiff's damages, including medical expenses and pain and suffering after the accident, however, are not germane to

the arguments made by defendant in seeking summary judgment.

**17.** One year prior to the accident she had a bone scraped in her left foot.

512 N.E.2d 272, 275 (1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988) (also quoting this standard from *Mounsey v. Ellard,* 297 N.E.2d at 52). Under this common duty of reasonable care owed to all legal visitors, defendant is not required to maintain a stairway "of maximum safety." *Toubiana v. Priestly,* 520 N.E.2d at 1310. Defendant therefore need not remove every piece of gravel on the stairway in order to create a reasonably safe stairway. *See, e.g., Goldman v. United States,* 790 F.2d at 184–185 (federal workers removed snow and ice from area which was therefore reasonably safe even though small patch of ice remained).

■ It is also true, as argued by defendant, that "a landowner has no duty to protect lawful visitors on his property from risks that would be obvious to persons of average intelligence." *Toubiana v. Priestly,* 520 N.E.2d at 1311. Stated otherwise, "If a risk is of such a nature that persons of ordinary intelligence would be aware of it, a landowner generally has no duty to warn of the risk." *Davis v. Westwood Group,* 420 Mass. 739, 652 N.E.2d 567, 570 n. 9 (1995); *accord Camerlin v. Marshall,* 411 Mass. 394, 582 N.E.2d 539, 542 n. 3 (1991) (if the condition " 'is open and obvious to them or to any ordinarily intelligent person in the exercise of due care, then no warning of any danger is necessary' "); *Young v. Atlantic Richfield Company,* 512 N.E.2d at 276.

■ Contrary to defendant's contention that the gravel was open and obvious, however, Scola testified that, at times, "you can't even see [the gravel] unless you go on it." She further described the gravel as small, hard rocks. Plaintiff similarly noted the size of the gravel as the size of peas in early spring. The warning to use the handrails is not a warning about the presence of gravel. The fact that Scola noticed the gravel on June 3, 1992, on the way into the post office does not establish that the gravel was open and obvious to a person of average intelligence. Scola visited the post office every day and therefore was highly familiar with the stairway and the fact that gravel was "always there." Furthermore, this court must, on summary judgment, view the record and all reasonable inferences therefrom in plaintiff's favor. Hence, notwithstanding the existence of other testimony that, for example, there was nothing to prevent plaintiff from seeing the gravel, summary judgment is unwarranted. In light of Scola's testimony in particular, therefore, this court finds a genuine issue of material fact as to whether the gravel was open and obvious to persons of average intelligence.

As previously noted, defendant additionally contends that there is no evidence of the existence of gravel on the stairway or that defendant knew or should of known of the presence of gravel. It is true that the duty of a property owner to exercise reasonable care for lawful visitors includes the obligation "to maintain the premises in a reasonably safe condition and to warn [defendant's] guests of any unreasonable dangers of which [defendant] was aware or should reasonably have been aware." *Polak v. Whitney,* 21 Mass.App.Ct. 349, 487 N.E.2d 213, 215 (1985). As phrased by the Massachusetts Supreme Judicial Court ("SJC"), "The obligation of one who controls business premises is to use due care to keep the premises provided for the use of its patrons in a reasonably safe condition, or at least to warn them of any dangers that might arise from such use, which are not likely to be known to them, and of which the defendant knows or ought to know." *Oliveri v. Massachusetts Bay Transportation Authority,* 363 Mass. 165, 292 N.E.2d 863, 864–865 (1973).

■ Scola, who frequents the post office every day, testified that gravel is always on the front entrance to the post office. The gravel is not only small but "sometimes you can't even see it," according to Scola. Nevertheless, defendant routinely examines the stairway throughout the day (Docket Entry # 18, Answers to Interrogatories) but apparently failed to remove the scattered gravel on the stairway. The fact that janitors swept the stairs between 4:00 a.m. and 6:00 a.m., approximately four hours before the accident, does not establish as a matter of law that the gravel was in existence for only a short period of time. To the contrary, Scola testified that there was a lot of rocks and little pebbles on the stairway and that "there was a

little bit piled up." A finder of fact could therefore infer that the gravel was on the stairway where plaintiff fell for a few hours prior to the accident in light of the amount of gravel Scola described and the nature of its placement in piles. Thus, viewing the record in plaintiff's favor, defendant either had actual knowledge of the gravel because it was always there or defendant should have known about the gravel.[18]

Defendant next submits that plaintiff did not take proper care in exiting the post office and thereby caused her fall. Consequently, she cannot prove causation. Defendant states that plaintiff admits that she does not know the cause of her fall and that she further admits to not using the handrail. Defendant reasons that, if plaintiff "had looked, and if there was gravel, she would have seen it" and, thus, her fall was not proximately caused by the acts of defendant. (Docket Entry #18, § F).

In order to show proximate cause, there must be a showing "that the defendant's negligence was a but-for cause of the loss and ... that the defendant's negligence was a substantial factor in bringing about the loss."[19] *Jorgensen v. Massachusetts Port Authority*, 905 F.2d at 522–524 (applying Massachusetts law). Defendant contends that plaintiff herself caused the fall by not looking down at the ground and by not holding onto the handrails. Scola, who did not witness the fall, testified that there was a lot of gravel. Scola goes to the post office every day and noticed the gravel on her way into the post office. She also testified that "sometimes you can't even see" the gravel. Drawing reasonable inferences in plaintiff's favor, Scola noticed the gravel on the way into the post office because she was highly familiar with the condition of the stairway. It cannot be assumed therefore that plaintiff would have seen the gravel if she had looked down at the steps.[20] Moreover, Scola stated at the time of the fall that there was a lot of gravel and that is why plaintiff fell. At this stage, therefore, there is enough evidence that plaintiff's injury would not have occurred but for defendant's negligence in allowing the presence of gravel on the stairway. Further, the amount of gravel, Scola's testimony of the existence of a lot of rocks and pebbles and her testimony that sometimes one cannot see the gravel creates a reasonable inference for the finder of fact to conclude that the gravel was a substantial factor in plaintiff's injury.

As a final issue, defendant maintains that there is significant doubt that gravel

18. Defendant asserts that David Fleenor ("Fleenor") testified that there was no gravel immediately apparent after the accident. Defendant, however, fails to provide a transcript of Fleenor's deposition testimony. Instead, defendant states that, through oversight, it sent the only copy of the transcript to Fleenor for review. Although defendant states that if plaintiff disputes its characterization of Fleenor's testimony then defendant will supplement the record, defendant has, thus far, failed to supplement the record. Moreover, it has been more than a year since plaintiff filed her brief wherein she makes no reference to Fleenor's testimony.

Rule 56(c) ("Rule 56(c)"), Fed.R.Civ.P., prescribes the type of evidence which this court can consider when faced with a summary judgment motion. The rule expressly permits the use of "admissions on file." The term admissions is not limited to admissions formally made pursuant to Rule 36, Fed.R.Civ.P. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (1983) ("admissions need not be pursuant to Rule 36" but may occur during pretrial conferences, oral argument on the motion, joint statements or stipulations); 6 James Wm. Moore *Moore's Federal Practice* ¶ 56.11[1.–5] (1995). Rather, the term

may encompass an admission made by counsel in a written brief submitted in opposition to a motion for summary judgment. *United States v. One Heckler–Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir.1980). Despite defendant's invitation to plaintiff not to contest Fleenor's testimony, however, there is no such concession or admission in plaintiff's brief or elsewhere in the record. Absent an admission, this court cannot blindly accept defendant's recitation of a deponent's testimony. Hence, Fleenor's testimony is not part of the summary judgment record.

As a collateral matter, this court has not considered Catherine R. Perry's unsworn statement in the course of issuing a recommendation on the summary judgment motion.

19. Massachusetts law further requires the plaintiff to show that the injury was a foreseeable consequence of the defendant's negligence. *Jorgensen v. Massachusetts Port Authority*, 905 F.2d at 522.

20. As previously determined, there are genuine issues of material fact as to whether the gravel was open and obvious to a person of average intelligence.

constitutes a defect under Massachusetts law. Landowners in Massachusetts are only liable "'for injuries caused by defects existing on their property and ... the law does not regard the natural accumulation of snow and ice as an actionable property defect, if it regards such weather conditions as a defect at all.'" *Sullivan v. Town of Brookline*, 416 Mass. 825, 626 N.E.2d 870, 871 (1994); *Aylward v. McCloskey*, 412 Mass. 77, 587 N.E.2d 228, 230 (1992). Stated otherwise, "The traditional Massachusetts rule [is] that there must be a defect, apart from a natural accumulation of water, ice, or snow, in order to hold a landowner liable." *Athas v. United States*, 904 F.2d 79, 81–82 (1st Cir.1990) (canvassing Massachusetts law in this area). First, the doctrine does not apply where human activity has changed the natural condition of the accumulated snow or ice. *Aylward v. McCloskey*, 587 N.E.2d at 230 n. 3; *Sullivan v. Town of Brookline*, 626 N.E.2d at 872 n. 2 (recognizing that liability may attach where snow or ice is no longer in its natural state); *Athas v. United States*, 904 F.2d at 82 (discussing cases where human activity rather than prevailing weather conditions caused the hazard). Second, the SJC has never extended this doctrine beyond the natural accumulation of snow, ice and rainwater. Thus, a stone imbedded in a sidewalk, *Hamlet v. Town of Watertown*, 248 Mass. 473, 143 N.E. 494 (1924), or a metal stump protruding one half to three quarters of an inch above the median, *Doherty v. Town of Belmont*, 396 Mass. 271, 485 N.E.2d 183, 185–186 (1985), may constitute actionable defects. On the other hand, edges on an asphalt road are not

defects inasmuch as such edges are common and it is not expected that automobile drivers will drive along the edge of the asphalt. *Zacharer v. Town of Wakefield*, 291 Mass. 90, 195 N.E. 893, 894 (1935); *see also Greenfield v. Freedman*, 328 Mass. 272, 103 N.E.2d 242, 244 (1952) (walkway covered by leaves deemed adequate and the defendant not required to furnish wider means of egress).[21] On the present record, however, this court cannot find as a matter of law that the gravel on the stairway was not a defect.[22]

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[23] that Defendant's Motion for Summary Judgment (Docket Entry # 17) be **DENIED**.

---

21. In *Bandanza v. Town of Norwood*, 360 Mass. 860, 277 N.E.2d 300 (1971), the SJC determined that stones and gravel in a playground did not pose any unusual hazard to young children. The facts in *Bandanza* involved a boy picking up a stone and throwing it at a five year old child. The SJC therefore believed that "the defendant was not bound to anticipate the use of the stones and gravel as missiles." *Bandanza v. Town of Norwood*, 277 N.E.2d at 300. In the case at bar, gravel was present on a stairway as opposed to a playground and the use of the stairs was anticipated or foreseeable unlike the use of a stone being thrown at a child's eye. Gravel on a stairway, particularly gravel which is difficult to see, may constitute a defect.

22. Furthermore, as previously discussed, there are factual disputes as to the amount of gravel

present on the stairway and whether it was open and obvious to a person of average intelligence using the stairway.

23. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986).